## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OHIO
## EASTERN DIVISION

| | |
|---|---|
| Mark Riley<br>720 North Starr Drive<br>Pickerington, OH 43147<br>*on behalf of himself and all others similarly situated*,<br><br>     Plaintiff,<br><br>  vs.<br><br>General Motors LLC<br>300 Renaissance Center<br>Detroit, MI 48243,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.:<br>)<br>)<br>) **JURY DEMAND**<br>)<br>)<br>)<br>)<br>)<br>) |

### CLASS ACTION COMPLAINT

Plaintiff, Mark Riley, by undersigned counsel, brings the following Class Action Complaint against General Motors LLC, and alleges, on his own behalf and on behalf of all others similarly situated, as follows:

### <u>INTRODUCTION</u>

1. Plaintiff, Mark Riley ("Plaintiff" or "Mr. Riley"), brings this lawsuit on his own behalf and on behalf of a proposed class of past and present Ohio owners and lessees of defective 2017-2019 GMC Acadia, 2019 Chevrolet Blazer, 2016-2019 Chevrolet Malibu, 2018-2019 Chevrolet Traverse, and 2016-2019 Chevrolet Volt vehicles (collectively, the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by General Motors LLC ("GM" or "Defendant").

2. The Class Vehicles contain a defect whereby the vehicles fail to detect that the driver placed the car in "Park" and prevent the vehicle driver from shutting off and locking the

vehicle. Instead, the Class Vehicles display a "Shift to Park" message on the instrument cluster even though the gear shifter is already in "Park" (hereinafter the "Shifter Defect").

3.    As a result of this Shifter Defect, Plaintiff and members of the Class are unable to shut off their vehicles and, to avoid battery discharge, are forced to resort to all sorts of gimmicks to get their vehicles to detect that the shift lever is in fact in "Park."

4.    Plaintiff and other members of the Class have given GM reasonable opportunities to cure the Shifter Defect, but GM has been unable and/or has refused to do so within a reasonable period of time.

5.    GM's conduct constitutes a breach of contract, breach of express and implied warranties, and a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

6.    GM has benefitted, and will continue to benefit, from its unlawful conduct – by selling and leasing more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles suffer from the Shifter Defect, which GM cannot fix. Had Plaintiff and other proposed class members known about the defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

7.    To remedy GM's unlawful conduct, Plaintiff, on behalf of proposed class members, seeks damages and restitution from GM, as well as notification to class members about the defect with the vehicles' shifters.

**PARTIES**

8.    Plaintiff Mark Riley is, and at all times mentioned herein was, an adult individual residing in Pickerington, Ohio.

2

9.      Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. GM's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. Thus, Defendant General Motors LLC is a citizen of Michigan with a principal place of business in Michigan.

10.     Defendant General Motors LLC, through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, in Ohio and nationwide. Defendant General Motors LLC is the warrantor and distributor of the Class Vehicles in the United States.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and GM are each citizens of different states. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff presents a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

12.     Personal jurisdiction exists over GM as Plaintiff purchased his vehicle in this District, Plaintiff sought repairs in this District, and GM, through its business of distributing, selling, and leasing the Class Vehicles in this District, has established sufficient contacts in this District such that personal jurisdiction over GM exists in this District.

13.     In addition, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff resides in this District and the acts and omissions forming the basis of Plaintiff's claims arose in this District.

## **FACTUAL ALLEGATIONS**

14.     All Class Vehicles suffer from a defect with their transmission control (shifter) assembly, which intermittently causes Class Vehicles to not enter park mode, displays a "Shift to Park" message on the instrument cluster directing drivers to shift their vehicle into Park, and prevents the vehicle driver from shutting off and locking the vehicle, despite the fact that the vehicle's shift lever has been shifted into the "Park" position.

15.     The Shifter Defect substantially impairs the value, safety, and use of the Class Vehicles to the Plaintiff and members of the Class, as they are unable to shut off their vehicles, are unable to lock their vehicles, and, to avoid battery discharge and to shut the vehicle off, are forced to resort to all sorts of gimmicks to get their vehicles to detect that the shift lever is in fact in "Park."

16.     Indeed, to get his vehicle to detect that the shifter is in fact in "Park," Plaintiff was forced to repeatedly wiggle the shifter, shift it through its gears, and start and shut off the engine.

17.     Plaintiff complained to GM's authorized dealerships about the Shifter Defect repeatedly, but the dealerships failed to repair the defect within a reasonable period of time.

18.     Plaintiff's experiences are not unique; numerous other consumers have complained about the same issue.  For example, carcomplaints.com is a website that re-

publishes National Highway Traffic Safety Administration (NHTSA) complaints. The site includes the following complaints dating back to 2018:[1]

- Additionally, the car dashboard gives out commands for putting the car in park after it is stationary. (Posted on August 24, 2018 by a driver from Kernersville, NC);

- When the car is parked on a flat surface (inside the garage, parking garage, parking lot), the car will display "shift to park" when it is already in park. The accessories stay on until the driver is able to get the car's computer to notice the car is in park. (Posted on August 18, 2018 by a driver from Aurora, CO);

- Placed the vehicle in park, it was stationary and it rolled forward. Message in the info center said "shift to park". I was parking in a mall parking lot. [T]his has occurred 5 times. I can push the gearshift back and forth and then it can be turned off and the message will disappear. I took it to the dealership and was told they are waiting on GM to see what can be done. (Posted on July 5, 2018 by a driver from Prescott, AR);

- When the vehicle is in park and you try to turn it off with the start/stop button an on dash error code of "shift to park" appears even though the vehicle is clearly in park. You are not able to turn the vehicle off. I took the vehicle in for service on 6/4/18 and was told that GM is aware of the issue however their engineers have not found a solution. This currently is forcing me restart the engine, put my car in reverse, shift back in drive, try re parking and turning off again repeating the process until it eventually turns off. I do not know if my car is truly in gear or not. I'm afraid that it might cause a dangerous situation. (Posted on June 3, 2018 by a driver from Portage, MI);

- A message shift to park kept appearing when the car was in park and shut off. (Posted on May 21, 2018 by a driver from Jacksonville, FL);

- When you put the shifter in park it does not recognize & cabin alarm starts to beep. The vehicle will also leave its headlights on overnight & drain your battery. Took to dealer and they [couldn't] do anything about it. It's been 2 weeks and no letter of resolution from manufacturer as the dealer said. (Posted on June 19, 2018 by a driver from Cody, WY).

19.     In addition, consumers posted their complaints about the Shifter Defect on GMC

Acadia enthusiast website acadiaforum.net, which Defendant or its agents monitor. One driver

posted that his 2017 Acadia has been suffering from the same Shifter Defect "sporadically over

---

[1] *Available at* https://www.carcomplaints.com/GMC/Acadia/2017/drivetrain/power_train.shtml *and* https://www.carcomplaints.com/GMC/Acadia/2018/drivetrain/power_train.shtml (last visited Feb. 3, 2021).

the past 2 weeks and now it does it every day," that he took it to the dealer only to be told that there is no fix, that "GM engineering is working on it," and that to get the "shift to park" warning to cease he could hold his "foot on the brake pedal and wiggl[e] the shifter handle then release both every few seconds ... [t]hen the message goes away 5-10 seconds later."

20.     The Shifter Defect is inherent in all Class Vehicles, and the Shifter Defect is the same for all Class Vehicles.

21.     GM is well aware of the defect.  On May 29, 2018, GM first issued Technical Service Bulletin ("TSB") No. PIT5616A.  The TSB is titled "VEHICLE DISPLAYS SHIFT TO PARK MESSAGE ON DIC WHEN IN PARK. VEHICLE MAY NOT SHUT OFF WHEN PUT IN PARK OR MAY NOT START" and warns that due to an "unknown" cause the Class Vehicles may exhibit the afore-mentioned defect. That TSB stated "Engineering is still investigating the root cause."

22.     On October 3, 2018, GM issued a subsequent TSB, No. 18-NA-297, entitled "Message Displaying Shift to Park when in Park." The TSB applies to 2016-2018 Chevrolet Malibu, 2018 Chevrolet Traverse, and 2017-2018 GMC Acadia vehicles.  The TSB states that "[s]ome customers may comment on an intermittent Shift to Park message when in Park and turning off the vehicle," and that "[t]he cause of the condition may be the park switch in the transmission control (shifter) assembly not pulling BCM signal low to electronically show Park condition."   The TSB provides that the defect can be corrected by "[r]eplac[ing] the transmission control (shifter) assembly."

23.     However, while TSB No. 18-NA-297 purported to provide a correction for the Shifter Defect, GM did not come up with this alleged fix until more than two years after it began selling the unmerchantable Class Vehicles; during that period of time the Class Vehicles suffered from the Shifter Defect without any fix.

24.     Further, in September 2019, GM issued another TSB, No. 19-NA-206, entitled "Intermittent Shift to Park Message Displayed While Vehicle in Park," which purported to replace TSB 18-NA-297.  The TSB applies to a broader set of vehicles than the prior TSBs; it applies 2019 Chevrolet Blazer, 2016-2019 Chevrolet Malibu, 2018-2019 Chevrolet Traverse, and 2017-2019 GMC Acadia vehicles.  The TSB states that "[s]ome customers may comment on seeing an intermittent Shift to Park message when the vehicle has been shifted into Park, and the ignition has been turned to the Off position," and that "[t]he cause of the condition may be that the park switch in the transmission control (shifter) assembly is not pulling the BCM signal low to electronically show that the vehicle is in the Park position."  The TSB provides that the defect can be corrected by "install[ing] an In-line Shifter Wire Harness Jumper between the shifter base connector and the console harness connector."

25.     However, while TSB No. 19-NA-206 purported to provide a correction for the Shifter Defect, GM did not come up with this alleged fix until three years after it began selling the unmerchantable Class Vehicles; during that period of time the Class Vehicles suffered from the Shifter Defect without any fix.

26.     Further, in practice TSB 19-NA-206 does not fix the Shifter Defect.  Indeed, as set forth below, a GM dealer attempted to repair Plaintiff's vehicle pursuant to that TSB but the Shifter Defect has continued to manifest after that attempted repair.  Moreover, as set forth below, Plaintiff initially experienced the Shifter Defect and complained about it to GM well before TSB No. 18-NA-297 or 19-NA206 were released and, notwithstanding the existence of those TSBs, GM did not repair Plaintiff's vehicle within a reasonable period of time.

27.     In addition, online complaints indicate that GM is still unable to actually fix the Shifter Defect.  For instance, on February 28, 2020, one Acadia owner complained that "Dealer replaced wiring harness Feb 2020, message started appearing again within the last week (July

5 2020)."[2] Another owner complained on May 11, 2020 that they presented their vehicle to a GM authorized dealer regarding the Shifter Defect and were told that while "there was a service bulletin issued for the failure . . . there was currently no fix for the vehicle."[3] Another owner complained on May 4, 2020 that they have "had this same issue supposedly repaired at the GMC dealership on two separate occasions and it is now giving me the same error."[4]

28.     Each Class Vehicle sale or lease is accompanied by GM's identical 3-year / 36,000-mile New Vehicle Limited Warranty.

29.     Prior to purchasing or leasing their vehicles, Plaintiff and members of the Class relied upon GM's representations of a New Vehicle Limited Warranty ("NVLW") that accompanied the sale or lease of their vehicles, and such representations were material to their decisions to purchase or lease their vehicles.

30.     The terms of GM's NVLW are contained in the warranty booklet that Plaintiff and all class members received at the time they purchased or leased the Class Vehicles.

31.     GM's warranty booklet sets forth the terms of its New Vehicle Limited Warranty as follows:

> GMC will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.
>
> **Warranty Applies**
>
> This warranty is for GMC vehicles registered in the United States and normally operated in the United States and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> **Repairs Covered**

---

[2] https://www.carcomplaints.com/GMC/Acadia/2017/drivetrain/power_train.shtml (last visited Feb. 3, 2021).
[3] *Id.*
[4] https://www.carcomplaints.com/GMC/Acadia/2017/drivetrain/power_train-2.shtml (last visited Feb. 3, 2021).

The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

\* \* \*

**Obtaining Repairs**

To obtain warranty repairs, take the vehicle to a GMC dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

32. GM controls execution of all warranty repairs by its dealers, as it provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines, Technical Service Bulletins, and other instructions.

33. In return, GM pays its authorized dealerships a monetary compensation for such warranty repairs.

34. Therefore, GM's authorized dealers are its agents for purpose of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed to GM.

**A. Plaintiff Mark Riley**

35. On June 15, 2017, Plaintiff Mark Riley purchased a new 2017 GMC Acadia, Vehicle Identification Number 1GKKNULS8HZ215426 (hereafter the "Riley Vehicle") from Dan Tobin GMC in Columbus, Ohio, an authorized dealership of the Defendant (hereafter "Dan Tobin GMC").

36. Dan Tobin GMC dealership assured Plaintiff that the vehicle was accompanied by GM's New Vehicle Limited Warranty and was itself free from defects of workmanship.

37. Despite these assurances, the vehicle is neither problem-free nor reliable. Instead, the Riley Vehicle repeatedly suffers from the Shifter Defect, which occurs in the Riley Vehicle intermittently, and has occurred as often as five to six times per week.

38.    To get his vehicle to detect that the shifter was in fact in the "Park" position, Plaintiff was forced to repeatedly wiggle the shifter, shift it through its gears, or start the engine and then shut off the engine.

39.    On several occasions, Plaintiff called Dan Tobin GMC and complained about the Shifter Defect.  In response, Dan Tobin GMC's service advisor told Plaintiff that GM was aware of the Shifter Defect, but there was no recall for that problem at the time.

40.    On July 6, 2018, Plaintiff brought his vehicle to Dan Tobin GMC and complained about the Shifter Defect.

41.    In response, Dan Tobin GMC told Plaintiff that GM had no repair for the Shifter Defect at the time and to check with Dan Tobin GMC at a later date.

42.    Following that visit, Plaintiff brought his vehicle to Dan Tobin GMC for an oil change and complained about the Shifter Defect again.

43.    In response, Dan Tobin GMC again told Plaintiff that GM had no fix yet.

44.    On November 1, 2018, Plaintiff, through his counsel, sent a letter to GM advising it that the Riley Vehicle suffered from the Shifter Defect and still had not been repaired.

45.    On January 20, 2020, Plaintiff brought his vehicle to Jeff Wyler Chevrolet of Columbus ("Wyler Chevrolet"), an authorized GM dealer, and complained about the Shifter Defect once again.

46.    In response, Wyler Chevrolet purported to follow TSB 19-NA-206 and installed a wiring harness in an attempt to repair the Shifter Defect.

47.    However, following Wyler Chevrolet's attempted repair on January 20, 2020, the Riley Vehicle has continued to experience the Shifter Defect.  Indeed, Plaintiff has experienced the defect as recently as January 27, 2021.

48.     Ultimately, GM failed to repair the Shifter Defect in the Riley Vehicle during the relevant warranty period.

## CLASS ACTION ALLEGATIONS

**A.  The Class**

49.     Plaintiff brings this case as a class action on behalf of a class of Ohio residents pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3) as follows:

> **Ohio Class:** All persons or entities in Ohio who bought or leased a 2017-2019 GMC Acadia, 2019 Chevrolet Blazer, 2016-2019 Chevrolet Malibu, 2018-2019 Chevrolet Traverse, or 2016-2019 Chevrolet Volt vehicle (the "Class Vehicles").

50.     Defendant and its employees or agents are excluded from the Class.

**B.  Numerosity**

51.     Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that tens or hundreds of thousands of Class Vehicles have been sold and leased in the State of Ohio that are the subject of the Class.

**C.  Common Questions of Law and Fact**

52.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

    a.     Whether the Class Vehicles were sold with a defective transmission gear shifter that causes the vehicle to intermittently display a "Shift to Park" message even though the shifter is in "Park" position, i.e., the Shifter Defect;

    b.     Whether the Class Vehicles were sold with a defective gear shifter that prevents

11

such vehicles from shutting off and being locked;

c.  Whether the Class Vehicles were sold with a defective gear shifter that prevents such vehicles from starting their engines;

d.  Whether Defendant knew about the above-described defect but failed to disclose the problem and its consequences to its customers;

e.  Whether Defendant breached its contracts with vehicle owners when it failed to repair the Shifter Defect;

f.  Whether Defendant breached its express warranties when it failed to repair the defect with the transmission gear shifter;

g.  Whether Defendant breached the implied warranty of merchantability when it sold vehicles that contain the Shifter Defect;

h.  Whether Defendant is liable for damages, and the amount of such damages;

i.  Whether Defendant should be required to disclose the existence of the Shifter defect; and

j.  Whether Plaintiff and class members are entitled to equitable relief including injunctive relief.

**D.  Typicality**

53.  Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a defective Class Vehicle, as did each member of the Class.  Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

**E.** **Protecting the Interests of the Class Members**

54. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interest which might cause them not to vigorously pursue this action.

**F.** **Proceeding Via Class Action is Superior and Advisable**

55. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, inter alia, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

56. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Breach of Contract

57.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58.     In connection with the sale or lease of the Class Vehicles, Plaintiff and class members entered into written contracts with the Defendant under which the Defendant agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the transmission and its components.

59.     Plaintiff and class members relied on Defendant's promise to repair the Class Vehicles within a reasonable time and without charge to the Plaintiff and class members when they agreed to purchase or lease the Class Vehicles and Defendant's promise to repair was part of the basis of the bargain.

60.     Plaintiff and class members submitted their vehicles to Defendant to repair the Shifter Defect.  However, Defendant failed to comply with the terms of the written contract it provided to the Plaintiff and each Class member by failing and/or refusing to repair the Shifter Defect as promised and/or by failing to repair the Shifter Defect within a reasonable period of time.

61.     Plaintiff and class members have given Defendant reasonable opportunities to cure the Shifter Defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

62.     Defendant's breach of contract has resulted in material damages to Plaintiff and the members of the Class.

63.     As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the contract, Plaintiff and Class members have suffered actual and

consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty Under R.C. § 1302.26, *et seq.***

64.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65.    In connection with the sale or lease of the Class Vehicles to Plaintiff and Class members, Defendant provided Plaintiff and class members with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the transmission and its components.

66.    Plaintiff and Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

67.    Plaintiff and Class members submitted their vehicles for warranty repairs concerning the Shifter Defect as referenced herein.  Defendant failed to comply with the terms of the express written warranty it provided to each Class member by failing and/or refusing to repair the Shifter Defect within a reasonable period of time under the vehicle's warranty.

68.    Plaintiff and Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

69. As a result of said nonconformities, Plaintiff and Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

70. Plaintiff and Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff's and Class members' acceptance of the Class Vehicles.

71. Plaintiff and Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Shifter Defect.

72. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff and Class members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## <u>THIRD CAUSE OF ACTION</u>
**Breach of Implied Warranty of Merchantability Under R.C. § 1302.27,** *et seq.*

73. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74. Defendant is a merchant with respect to motor vehicles.

75. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class members.

76. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

16

77. Defendant breached the implied warranty of merchantability in that at the time of sale the Class Vehicles suffered from the Shifter Defect and thus were not in merchantable condition when Plaintiff and Class members purchased or leased their vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

78. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Shifter Defect, Plaintiff and Class members were harmed and suffered actual damages in that the Class Vehicles' Shifter Defect is substantially certain to manifest and has in fact manifested before and after the expiration of applicable warranties.

79. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**FOURTH CAUSE OF ACTION**
**Breach of Warranty Under the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, *et seq.***

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. Plaintiff and members of the Class are each a "consumer" as defined in 15 U.S.C. § 2301(3).

82. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

83. The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).

17

84.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

85.     15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiff and Class members.

86.     The Defendant's sale of the Class Vehicle suffering from the Shifter Defect and Defendant's subsequent failure to repair the Class Vehicles' Shifter Defect within a reasonable period of time during the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

87.     Despite repeated demands, Defendant has failed to remedy the Class Vehicles' defects within a reasonable time and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

88.     Defendant's breaches of the written and implied warranties constitute a violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §2301, et seq.

89.     As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff and Class Members have suffered damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

        a.   An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

        b.   An order approving revocation of acceptance of the Class Vehicles;

c.  Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff and class members on the subject contracts;

d.  Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or prompt repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles, in the event that Plaintiff is not found to be entitled to revocation;

e.  Incidental and consequential damages;

f.  Punitive damages;

g.  Reasonable attorneys' fees and costs;

h.  Pre-judgment and post-judgment interest, as provided by law;

i.  Plaintiff demands that Defendant perform a recall and repair all Class Vehicles; and

j.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: March 4, 2021

Respectfully submitted,

By:  */s/Donald Screen*_____
Donald Screen (0044070) (trial attorney)
Subodh Chandra (0069233)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, Ohio 44113
216.578.1700 Phone / 216.578.1800 Fax
Donald.Screen@ChandraLaw.com
Subodh.Chandra@ChandraLaw.com

*and*

Sergei Lemberg (*pro hac vice motion
forthcoming*)
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
slemberg@lemberglaw.com

*Counsel for Plaintiff*