**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK RILEY, on behalf of himself** | : | |
| **and all others similarly situated,** | : | **Case No. 2:21-cv-00924** |
| | : | |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **GENERAL MOTORS, LLC,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendant General Motors, LLC's ("GM") Motion to Dismiss and Motion to Strike. (ECF No. 7). For the reasons set forth below, the Court **DENIES** Defendant's Motion to Dismiss (*Id.*); **GRANTS** Defendant's Motion to Strike Plaintiff's request for Punitive Damages; and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Breach of Implied Warranty of Merchantability Claim.

## I.   BACKGROUND

### A.  Factual Background

On June 15, 2017, Mark Riley purchased a new 2017 GMC Acadia ("Acadia") from an authorized General Motors dealership in Columbus, Ohio. (ECF No. 1 at 9). That dealer assured Riley that his Acadia was defect free and under GM's New Vehicle Limited Warranty. (*Id.*). Soon after his purchase, however, Riley began experiencing problems with his new vehicle. (*Id.*).

Up to six times per week, Riley had trouble parking his Acadia. (*Id.*). When Riley shifted his Acadia into the "Park" gear, his vehicle often flashed an error signal in the instrument panel. (*Id.* at 4). This signal indicated that the vehicle was not in "Park" when, in fact, Riley had moved

the shifter to the "Park" position. (*Id.*). Importantly, when the vehicle was unable to detect that it was in "Park," it could neither be shut off nor locked. (*Id.*). To solve this problem, Riley developed some practical solutions: he wiggled the shifter; shifted through gears; or turned the engine on and off. (*Id.* at 10). After performing one or more of these techniques, Riley's Acadia would eventually recognize the vehicle as "Parked." (*Id.*).

In addition to addressing the problem on his own, Riley also alerted the GM dealer from which he purchased the vehicle. (*Id.*). In response, the dealer's service advisor represented to Riley that although there was no recall then, GM was aware of the issue. (*Id.*). On two subsequent occasions, Riley repeated his initial complaint to the same GM dealer. (*Id.*). Finally, on November 1, 2018, Riley, through counsel, complained directly to GM about the shifter issue. (*Id.*).

Approximately fourteen months later in January 2020, Riley tried his luck with a different authorized GM dealer. (*Id.*). By then, GM had issued a Technical Service Bulletin that purportedly addressed the shifter problem: TSB, No. 19-NA-206. (*Id.* at 7). This second dealership worked on Riley's Acadia pursuant to TSB, No. 19-NA-206. (*Id.* at 10). Despite this effort, Riley's Acadia continued to experience the shifter problem as late as January 27, 2021. (*Id.*).

## B. Procedural Background

Plaintiff filed his putative class action Complaint on March 4, 2021, alleging breaches of contract and warranty arising from the sale or lease of certain GM vehicles. (ECF No. 1). On May 7, 2021, Defendant filed its Motion to Dismiss. (ECF No. 7). Defendant seeks dismissal on a number of bases. (*Id.*). First, Defendant moves to dismiss or stay the case *sub judice* pending the outcome of a related action against GM—*Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536 (D. Conn. 2020)—under the first-to-file rule. (*Id.* at 7). That case seeks a nationwide class action and various state sub-classes covering a subset of the vehicles at issue here. (*See* ECF No. 7-8 at 15–16). Next, Defendant also moves to dismiss for failure to state a claim under Rule 12(b)(6).

2

(ECF No. 7 at 9).  Further, asserting a lack of subject matter jurisdiction under Rule 12(b)(1), Defendant seeks to limit the scope of the putative class to those who purchased or leased the exact same vehicle model and manufacturing year as purchased by Plaintiff.  (*Id.* at 18).  Additionally, in the event any of Plaintiff's claims survive its Motion to Dismiss, Defendant moves to strike Plaintiff's request for punitive damages.  (*Id.* at 19).  Plaintiff timely filed his Response in Opposition (ECF No. 14), and Defendant timely filed its Reply (ECF No. 15).  Finally, Plaintiff filed a Notice of Supplemental Authority. (ECF No. 16).  Thus, Defendant's motion is now ripe for review.

## II.    STANDARD OF REVIEW

When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).  Federal Rule of Civil Procedure 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction.  *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (identifying the two types of 12(b)(1) motions to dismiss).  Facial attacks on subject matter jurisdiction "merely question[] the sufficiency of the pleading." *Id.*  A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss.  *Id.*  In a factual attack on subject matter jurisdiction, a court "must ... weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.  See also Nat'l Assoc. of Minority Contractors v. Martinez*, 248 F. Supp.2d 679, 681 (S.D. Ohio 2002).

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005).  The Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).  Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III.    LAW & ANALYSIS

Defendant moves to dismiss or stay the action based on the first-to-file rule.  Alternatively, Defendant moves to dismiss Plaintiff's Complaint for a failure to state a claim upon which relief can be granted.  In the event Plaintiff's claims survive its Motion to Dismiss, Defendant moves to strike Plaintiff's request for punitive damages.  Finally, Defendant moves to dismiss Plaintiff's claims based on vehicles distinct from the one he purchased based on subject matter jurisdiction. The Court considers each in turn.

### A.  Motion to Dismiss or Stay under First-to-File Rule

The first-to-file rule "provides that, when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed

should *generally* proceed to judgment." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (emphasis in original) (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007)) (internal quotations omitted).  In this way, the first-to-file rule "conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Baatz*, 814 F.3d at 789 (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)).  The first-to-file rule thus recognizes the inherent inefficiency of allowing two, largely identical suits, to proceed to judgment at the same time.  Hence, "[t]he first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Id.*  Additionally, the first-to-file rule "encourages comity among federal courts of equal rank." *Zide Sport Shop of Ohio v. Ed Tobergate Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001).

Courts examine three factors in determining whether to apply the first-to-file rule: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir.1991)).  If these factors are met, then "the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the first-to-file rule in a particular case." *Id.* (quoting *Certified Restoration Dry Cleaning Network, LLC*, 511 F.3d at 551–52).

If faced with "a duplicative suit, [a federal court] may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). Dismissal may also be appropriate.  *See Baatz*, 814 F.3d at 793–94.  The Court will consider these factors in turn.

### 1. Chronology of Events

Regarding the chronology of events, the Court looks to the respective filing dates of the complaints in question. *Id.* at 789. Here, Defendant notes that it is undisputed that *Napoli-Bosse* was filed before *Riley*. Consistent with Defendants' assertion, Plaintiff offers no response. Accordingly, this factor weighs in favor of applying the first-to-file rule.

### 2. Similarity of the Parties Involved

Next, the Court considers the similarities of the parties involved in the cases. The Sixth Circuit held that "[t]he first-to-file rule applies when the parties in the two actions "substantial[ly] overlap," even if they are not perfectly identical." *Id.* at 790 (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir.1997)).

The Defendant argues that the parties here and in *Napoli-Bosse* satisfy the substantial overlap rule as articulated in *Baatz*. (ECF No. 7 at 8). First, the Defendant in each case is identical. Second, although Defendant concedes that Plaintiffs are not identical, Defendant argues that the named Plaintiff here, Riley, is a member of the putative class in *Napoli-Bosse*. (*Id.*). Based on Riley's status as a named plaintiff here and a member of the class in *Napoli*-Bosse, Defendant argues that the requirements of the substantial overlap rule are met. (*Id.* at 9) (citing *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 476 (6th Cir. 2019)).

Plaintiff takes the opposite position: despite each action having the same Defendant, the putative classes are sufficiently distinct. (ECF No. 14 at 8). Relying on *Sims v. Time Warner Cable, Inc.*, 2018 WL 6182042, at *2 (S.D. Ohio Nov. 27, 2018), Plaintiff asserts that when many if not most of the putative class members do not overlap, the "substantial overlap" rule is not satisfied. (*Id.*). Furthermore, Plaintiff argues that when there is a strong implication that the plaintiff and class members in the later-filed action are not members in the first filed action, the first-to-file rule is inappropriate. (*Id.* at 9) (citing *Galoski v. Stanley Black & Decker, Inc.*, No.

1:14 CV 553, 2014 WL 4064016, at *3 (N.D. Ohio Aug. 14, 2014); and *Wilkie v. Gentiva Health Servs.*, Civ. No. 10–1451 FCD/GGH, 2010 WL 3703060, at *1-4 (E.D. Cal. Sep. 16, 2010)). According to Plaintiff, these features of the putative classes weigh against the application of the first-to-file rule. (*Id.*).

First, as is undisputed by the parties, the Defendant here is exactly the same as the Defendant in *Napoli-Bosse*: General Motors LLC. Hence, whether the parties in each action are sufficiently similar turns on the similarity of the plaintiffs. Here, however, the plaintiffs in each case are neither wholly identical nor distinct, instead they overlap. Yet, for this factor to weigh toward application of the first to file rule, substantial overlap is required.

The Sixth Circuit is without case law that speaks directly to this factual circumstance. For example, in *Baatz*, the Sixth Circuit instructed district courts "to evaluate the identity of the parties by looking at overlap with the putative class." *Baatz*, 814 F.3d at 791. There, whether and to what extent Plaintiffs were members of the putative class was not at issue. *See id.* ("The Medina Landowners undoubtedly would be members of the *Wilson* class if it were certified."). Instead, the similarity-of-the-parties factor hinged on the extent to which the first-to-file rule could be invoked prior to class certification. *Id.* While the Sixth Circuit answered that inquiry in the affirmative, the entire group of plaintiffs in *Baatz* ("the Medina landowners") were a subset of the plaintiffs in the first filed case. *See id.* Likewise, in *Heyman*, another Sixth Circuit decision relied on by Defendant, the plaintiff was a member of the putative class in the first filed case. *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 476 (6th Cir. 2019) ("Heyman clearly would be a member of the putative class in Kennedy were it to be certified.").

In short, substantial overlap has seemingly been found only where the group of plaintiffs in the second filed case are wholly subsumed by the first groups of plaintiffs. *See id.*; *Baatz*, 814

F.3d at 791. This suggests, *inter alia*, that if plaintiffs are already represented in the first suit, the second suit would be duplicative, expose defendants to conflicting judgements, and undermine the comity between federal courts. Accordingly, those results are consistent with the values served by the first-to-file doctrine.

Here, however, that is not the case. The putative classes here and in *Napoli-Bosse* differ on two grounds, one more important than the other: (1) geographic scope; and (2) the definition of the Class Vehicle. First, the case *sub judice* only covers owners and lessees of certain GM-manufactured vehicles in Ohio. (ECF No. 1 at 11). In *Napoli-Bosse*¸ the geographic scope is nationwide with various state sub-classes, including Ohio. (ECF No. 7-8 at 15–16). While it might seem that all of the putative Plaintiffs in this case are subsumed in the *Napoli-Bosse* litigation, the trajectory of the analysis changes dramatically once the definition of Class Vehicle is examined. In *Napoli-Bosse*, Class Vehicles are defined as 2017-2018 GMC Acadias. (*Id.*). Here, however, the Class Vehicle definition is much broader. It includes owners and lessees of: "2017-2019 GMC Acadia, 2019 Chevrolet Blazer, 2016-2019 Chevrolet Malibu, 2018-2019 Chevrolet Traverse and 2016-2019 Chevrolet Volt vehicles." (ECF No. 1 at 1). Taken together, this factor weighs against the application of the first-to-file rule.

### 3. Similarity of the Issues or Claims at Stake

Finally, Defendant asserts that the issues or claims at stake are sufficiently similar. First, Defendant asserts that when the complaints are "drafted by the same attorney and use identical language throughout much of the two filings," it is an indicator that the two cases are sufficiently similar. (ECF No. 7 at 8) (citing *Heyman*, 781 Fed. App'x at 477). Moreover, because the underlying factual basis of each suit is the same—GM vehicles produced with an alleged shifter issue—the similarity prong is satisfied. (*Id.* at 9).

8

Plaintiff rejoins by pointing to the live claims in each case. Here, Plaintiff asserts claims that include breach of warranty under Ohio law and the Magnuson-Moss Warranty Act. (ECF No. 14 at 7). In *Napoli-Bosse*, the only live a claim is for breach of contract. (*Id.*). Moreover, relying heavily on *Banus v. Whole Foods Mkt. Grp., Inc.*, Case No. 17–cv–2132, 2018 WL 549272, at *1 (N.D. Ohio Jan. 25, 2018), Plaintiff appears to argue that state law claims, even if similar, brought pursuant to the law of separate states—for example, Ohio and Connecticut—are necessarily different claims. (*Id.*).

In determining whether issues are sufficiently similar to invoke the first-to-file rule, the Sixth Circuit has held that "issues need not be identical, but they must be materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Baatz*, 814 F.3d at 791 (quoting Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997)) (internal quotations omitted). Both parties agree that the issues here are not identical; yet, they diverge on whether the issues are sufficiently similar. Under *Baatz*, they are not. Although Defendant urges this Court to not, in its words, take a formalistic approach, *Baatz* requires some level of formality.

The *Baatz* test instructs that the two cases are sufficiently similar when they are "materially on all fours" *and* "have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Baatz*, 814 F.3d at 791 (emphasis added). Assuming for the sake of argument that the first requirement is met, the first action filed would still need to have such an identity with the second that this Court would have little or nothing left to do once the first is concluded. *See id.* For example, if the first case is litigated to completion and Plaintiffs there secured a favorable judgment against Defendant, this Court would still need to resolve the state law and federal claims of the plaintiffs here. Defendant resists this view, in part, by relying on the

theory that the breach of contract claims and the breach of warranty claims are duplicative.  (*See* ECF No. 15 at 4).  In other words, because the Defendant characterizes the warranty claims as surplusage, it asserts that the core of the case is the contract claim.

For this proposition, Defendant cites three district court cases that have dismissed so-called duplicative claims on such grounds.  (ECF No. 7 at 14) (citing *Hill v. Winnebago Indus., Inc.*, No. 3:17-CV-00678, 2018 WL 5721947, at *1 (M.D. Tenn. Nov. 1, 2018); *Robinson v. Kia Motors Am., Inc.*, No. CIV.A. 13-006, 2015 WL 5334739, at *1 (D.N.J. Sept. 11, 2015); *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 691 (S.D. Ohio 2018)).  Plaintiff does not address the decisions relied on by Defendant, but instead insists that he may plead his claims for breach of express warranty and contract in the alternative.  (ECF No. 14 at 17) (citing Fed. R. Civ. P. 8(a)).  Moreover, Plaintiff points to the conclusion reached in *Napoli-Bosse* concerning Defendant's duplicative claim argument.  (*Id.*) (citing *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 549 (D. Conn. 2020)).  There, the Court found not only that Fed. R. Civ. P. 8(a) expressly allows for alternative theories of liability, but that Plaintiff's breach of contract and breach of express warranty claims are legally distinct.  *Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 549 (D. Conn. 2020)*.*  As such, dismissal on this basis was inappropriate.

Here, the same is true.  First, Defendant's proffered arguments are unpersuasive.  The first case relied upon by Defendant is at the summary judgment stage, implying that the claim survived a motion to dismiss. *See Winnebago Indus., Inc.*, 2018 WL 5721947, at *3. The next unreported case, while more persuasive than the first, does not engage Rule 8 in terms of pleading in the alternative. *See Robinson*, 2015 WL 5334739, at *15.  Finally, the sole reported case and the only decision from the Southern District, does not hold that a breach of contract claim and breach of express warranty claim should not be plead together.  *See Borden*, 304 F. Supp. 3d at 691.  Instead,

the Court there issued a show cause order, commanding Plaintiff to explain why it "should not dismiss her intentional misrepresentation claim (Count Five) as duplicative of her fraud claim (Count Three)." *Id.* Further, it is significant that the Defendant was unable to produce any case law, particularly from Ohio state courts that support this proposition. Thus, the Court rejects this conclusion and finds the claims substantively distinct and for purposes of the *Baatz* factors. Thus, having considered the *Baatz* factors and determining that they weigh against application of the first-to-file rule, the Motion to Dismiss on this basis is **DENIED**.

### B.  Motion to Dismiss under 12(b)(6)

#### 1.  Breach of Express Warranty

Plaintiff alleges that the New Vehicle Limited Warranty ("Limited Warranty") that accompanied his Acadia is an express warranty under Ohio law and that Defendant breached that warranty.  (ECF No. 1 at 15–16).  Defendant argues that Plaintiff fails to state a claim for breach of warranty for several reasons.  (ECF No. 7 at 10).  First, according to Defendant, the Limited Warranty is not an express warranty.  (*Id.* at 11).  Second, Plaintiff does not allege a defect that would be covered by the warranty.  (*Id.*). Third, Plaintiff has not adequately alleged a breach.  (*Id.*). Finally, Plaintiff does not adequately allege "pre-suit notice," a required element under Ohio law. (*Id.* at 10).  Plaintiff rejoins each of Defendant's points.  (ECF No. 14 at 10–17).  The Court will consider each issue in turn.

"To state a claim for breach of warranty under the [Ohio] UCC, a plaintiff must plead that: (1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a result of the defect." *Forsher v. J.M. Smucker Co.*, No. 5:19CV00194, 2020 WL 1531160, at *7 (N.D. Ohio Mar. 31, 2020) (quoting *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008)).

a.  *Whether the New Vehicle Limited Warranty was an Express Warranty*

11

Ohio Revised Code section 1302.26 provides that "[e]xpress warranties by the seller are created by the seller" in three ways.  Ohio Rev. Code § 1302.26(A)(1) (enumerating methods for creating an express warranties).  Pertinent here is the method prescribed by subpart (1) of 1302.26(A): "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Ohio Rev. Code. § 1302.26(A)(1).

Plaintiff provides an excerpt of GM's New Vehicle Limited Warranty, per GM's warranty booklet:

> GMC will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.
>
> **Warranty Applies**
>
> This warranty is for GMC vehicles registered in the United States and normally operated in the United States and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> **Repairs Covered**
>
> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.
>
> * * *
>
> **Obtaining Repairs**
>
> To obtain warranty repairs, take the vehicle to a GMC dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

(ECF No. 1 at 8–9).

12

Defendant argues that the Limited Warranty set out above does not fall within the scope of an express warranty as defined by Ohio Revised Code § 1302.26(A)(1) because it is merely a promise to repair certain defects. (ECF No. 7 at 11). For this proposition, Defendant relies on three out-of-district decisions. Notably, not one of those cases interprets the state law at issue here nor does Defendant assert that the laws interpreted in the cited cases are substantially similar to Ohio laws. (*Id.*) (citing *Napoli-Bosse*, 453 F. Supp. 3d at 545 (interpreting Connecticut law); *Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at *5 (N.D. Ill. Sept. 1, 2017) (Illinois and North Carolina law); *Gernhardt v. Winnebago Indus.*, No. 03-73917, 2003 WL 23976324, at *3 (E.D. Mich. Dec. 30, 2003) (Michigan law). Perhaps most surprising, Defendant cites a case highlighting a split of authority on whether "repair-and-replace warranties are … 'express warranties,'" specifically noting that Ohio ***does*** recognize such provisions as express warranties. *Napoli-Bosse*, 453 F. Supp. 3d at 545 (quoting *Goddard v. General Motors Corp.*, 60 Ohio St.2d 41, 44, 396 N.E.2d 761 (Oh. 1979) (a "fair reading" of warranty promising to "repair any defective or malfunctioning part of the vehicle" created an "express" warranty under Ohio statute based on UCC § 2-313)).

Plaintiff is quick to point out the internal incoherence of Defendant's argument as described above. (ECF No. 14 at 12). Moreover, according to Plaintiff, Ohio courts have repeatedly recognized so called "repair-and-replace" warranties as express warranties. (*Id.*). For this proposition, Plaintiff relies on two Ohio state court cases—one from the Ohio Supreme Court— and one Southern District of Ohio decision. (*Id.*) (citing *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 504 (S.D. Ohio 2012); *Goddard v. Gen. Motors Corp.*, 60 Ohio St. 2d 41, 42, 396 N.E.2d 761, 763 (1979)); *St. Henry Tile Co. v. Cain*, No. 1371, 1995 WL 783603, at *1 (Ohio Ct. App. Dec. 20, 1995)). In short, this Court finds that under Ohio Revised Code section 1302.26,

courts have repeatedly recognized "repair-and-replace" warranties as express warranties. Thus, Plaintiff has satisfied this element of the breach of warranty claim.

b. *Whether Defendant Breached the Limited Warranty*

Next, Defendant argues that Plaintiff fails to allege a defect covered by the Limited Warranty. (ECF No. 7 at 11). According to Defendant, Plaintiff alleges a design defect. (*Id.* at 12). Additionally, Defendant maintains, design defects are not covered by the warranty at issue here. (*Id.* at 11). Instead, Plaintiff would have needed to allege a defect that implicated "material or workmanship." (*See id.*). Because Plaintiff's defect allegation falls outside of the warranty at issue, Defendant contends that Plaintiff has not asserted a breach of the warranty. (*Id.* at 12).

Plaintiff responds by pointing out that this precise argument has "been rejected by the Court in *Napoli-Bosse*." (ECF No. 14 at 13) (citing *Napoli-Bosse v. General Motors, LLC*, 453 F. Supp 3d 536, 547–48. (D. Conn 2020)). There, the Court concluded that the defect at issue could have equally stemmed from either a design or manufacturing defect. (*See id.*). Moreover, Plaintiff notes, the Court there also found that resolving the ambiguity about the source of the defect in Defendant's favor "would be to invert the motion to dismiss standard." (*See id.*). Plaintiff goes on to assert that it did allege a defect in material or workmanship, but concedes that he cannot allege the root cause of the defect with specificity absent discovery. (ECF No. 14 at 14–15).

Notably, the Complaint does not assert a specific defect theory concerning the shifter issue. (*See generally* ECF No. 1). That is, Plaintiff neither expressly alleges a manufacturing defect nor a design defect when discussing the problems experienced with the shifter. (*Id.*). While Defendant argues that the facts alleged sound in design defect, Plaintiff maintains it "alleges the defect is one of material or workmanship." (ECF No. 14 at 14).

Federal courts analyzing similar arguments "have found that speculation about the precise origin of a defect is imprudent at the pleading stage and warranty limitations therefore do not

supply good grounds for early dismissal." *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 674 (E.D. Mich. 2020) (citing *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2015 WL 4591236, at *19 (D.N.J. July 29, 2015)); *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1011 (E.D. Mich. 2017) ("At this early stage … without the benefit of any factual development as to the cause and origin of the alleged defect, dismissal of the express warranty claims is not justified by a premature and uninformed classification of the alleged defect as being categorically in the realm of "design" or "manufacturing."). Importantly, "[p]laintiffs are not required to commit to a single theory of the origin of the defect at this time." *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 288 (E.D. Mich. 2021) (citing *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 723 (E.D. Mich. 2021)).

Moreover, just because Plaintiff alleges that the defect in question affects all of the Class Vehicles produced by GM does not, on its own, necessarily preclude an allegation of a manufacturing defect. *See Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 673 (E.D. Mich. 2020) (finding that "it is logically possible that either [a manufacturing or design defect] could be the case"). Indeed, the Court in *Napoli-Bosse* rendered this same conclusion based on a substantially similar argument. *See* 453 F. Supp 3d 536, 547–48. (D. Conn 2020) ("[I]t is simply not possible for this Court to know the genesis of the alleged defect at this stage. Thus, I join those Courts that have declined to dismiss a complaint where it is not yet apparent whether the alleged defect is a manufacturing or a design defect."). Thus, the Defendant's description of the pleadings does not take Plaintiff's claim outside of the warranty and "does not warrant dismissal" on this basis at this stage. *See Francis*, 504 F. Supp. 3d at 674.

Defendant also argues that Plaintiff fails to allege that the shifter defect was not addressed within a reasonable time. (ECF No. 7 at 13). Moreover, Defendant emphasizes that all that was

required under its Limited Warranty was "that repairs will be corrected within a reasonable time." (*Id.*) (citing *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1231 (N.D. Ga. 2005)). Plaintiff notes that the warranty period has since expired, and the shifter issue has not been completely resolved.

Although there appears to be a dearth of case law on what exactly constitutes a reasonable time to repair, Plaintiff's allegation of more than two years for his shifter issue appears sufficient at the pleading stage. Notably, Defendant relies on a Northern District of Georgia decision that instructs under Georgia state law, "reasonable time to repair is a jury question." *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1232 (N.D. Ga. 2005). There, the Court found "[u]nder the specific terms of the limited warranty at issue in this case, the warranty is not breached unless or until Defendant has refused or failed to repair the vehicle." *Id.* at 1227. ("Mercedes–Benz USA, LLC warrants .... that any authorized Mercedes–Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.").

Here, a similar warranty is at issue: "[t]he warranty covers repairs to correct any vehicle defect … due to materials or workmanship occurring during the warranty period." (ECF No. 7-6 at 9). Hence, under the standard used by the *Hines* Court, Plaintiff alleges a breach. That is because as of January 27, 2021, Plaintiff's Acadia still suffers from the shifter issue. Because Plaintiff alleges that Defendant attempted to repair the vehicle, it would seem that Defendant failed to repair the vehicle altogether. Thus, Plaintiff did not simply allege facts that the Court could infer that the time to repair was unreasonable, Plaintiff alleged that the repair never took place. As such, Plaintiff has sufficiently pleaded that Defendant did not repair or replace within a reasonable time as required by the express warranty.

c.  *Whether Plaintiff Provided Defendant with Reasonable Notice*

Under Ohio Revised Code section 1302.65(C)(1), "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." O.R.C. § 1302.65(C)(1).  Courts in Ohio have held this statutory provision as applying to breach of express warranty claims.  *See e.g., Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 512 (S.D. Ohio 2012); *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008); *Jones v. Davenport*, No. 18162, 2001 WL 62513, at *8 (Ohio Ct. App. Jan. 26, 2001).

Here, Defendant argues that Plaintiff failed to plead that it provided Defendant with adequate pre-suit notice of the alleged breach of warranty, as required under R.C. § 1302.65(C)(1). (ECF No. 7 at 10).  Specifically, Defendant maintains that Plaintiff's allegation that he notified GM of the shifter issue with his Acadia was simply not enough to satisfy his pleading requirements under a breach of an express warranty claim. (*Id.*).  Defendant relies on three decisions describing the requirement of providing a defendant with adequate notice of breach under R.C. § 1302.65. (*Id.*) (citing *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978); *Forsher v. J.M. Smucker Co.*, 2020 WL 1531160, at *8-9 (N.D. Ohio Mar. 31, 2020); St. Clair v. Kroger Co., 581 F. Supp. 2d 896, 903 (N.D. Ohio 2008)).  Importantly, Defendant appears to be arguing that Plaintiff failed to *plead* that he provided pre-suit notice, not that he, in fact, failed to provide adequate notice.

Plaintiff retorts in his Response by offering a copy of the notice described in his Complaint. (*See* ECF No. 14-2, Exhibit A-1).  Additionally, Plaintiff provides a declaration from one of his attorneys asserting that the notice provided is a true and accurate copy of the same letter sent to GM.  (ECF No. 14-1, Exhibit A).  Moreover, Plaintiff notes that letter here is almost indistinguishable from the letter sent in the *Napoli-Bosse* case.  (ECF No. 14 at 11).  Finally,

17

Plaintiff notes that the Court in *Napoli-Bosse* took judicial notice of the letter and ultimately found that it was "easily sufficient to put GM fairly on notice that the plaintiff believed it to be in breach of its promise to repair any defects within a reasonable time." (*Id.*) (citing *Napoli-Bosse* v. General Motors, LLC, 453 F. Supp 3d 536, 547–48. (D. Conn 2020)).

Here, Plaintiff appears to concede that its pleading is insufficient to satisfy its requirement for a breach of warranty claim. Yet, as the thrust of Plaintiff's argument reveals, it may not matter. That is because "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *In re Fair Fin. Co.*, 834 F.3d 651, 656 (6th Cir. 2016) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) (internal quotations omitted). As stated above, Plaintiff certainly refers to this letter in his Complaint. (ECF No. 1 at 10). Moreover, as a necessary element of the breach of warranty claim, it cannot be argued that the pre-suit notice is not integral to its claim. Finally, like the Court in *Napoli-Bosse*, this Court finds that given the substance of the notice letter, it is sufficient to put the Defendant on notice of a subsequent breach of warranty claim. In the letter, Plaintiff first describes the shifter issue coupled with manufacturers inability to repair and then clearly states these defects "constitute a breach of warranty, in that they substantially impair its use, value and safety to the client." (ECF No. 14-2). Thus, because this notice was referenced in his Complaint, Plaintiff has adequately pleaded a pre-suit notice.

Finally, Defendant does not assert that Plaintiff failed to allege he "suffered injury as a result of the defect" as required under Ohio law. Consequently, Defendant's objections to Plaintiff's Complaint on its breach of express warranty claim are unsuccessful and Defendant's Motion to Dismiss this claim is **DENIED**.

### 2. *Breach of Contract*

Defendant argues that Plaintiff has failed to state a breach of contract claim for two primary reasons: (1) the parties are not in privity; and (2) the claim is duplicative of its express warranty claim. (ECF No. 7 at 14).

As a threshold matter, Plaintiff is not clear about what contract it entered into with Defendant. Plaintiff states "[i]n connection with the sale or lease of the Class Vehicles, Plaintiff and class members entered into written contracts with the Defendant." (ECF No. 1 at 14). At first blush, it appears that Plaintiff alleges that he entered into a purchase agreement with Defendant which included the limited warranty. If that is the case, Defendant's argument regarding privity would provide a strong basis for dismissal. Under Ohio law, a plaintiff must allege that the defendant was in privity with the plaintiff to assert a breach of contract claim. Because Plaintiff alleges that he purchased his vehicle from an authorized dealer and not GM directly, he would need to allege that the dealer was an agent of GM. Absent this allegation, Plaintiff's breach of contract claim quickly falls apart.

Yet, if Plaintiff's breach of contract claim is exclusively about the limited warranty, according to Defendant, it suffers from a different problem: it is duplicative of its express warranty claim. As discussed under the final *Baatz* factor—similarity of issues, Plaintiff's claims are not duplicative. Finally, Plaintiff's argument demonstrating that pleading in the alternative is his right under Rule 8(a) is enough to overcome Defendant's contention.

Further, "constru[ing] the complaint in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff," as this Court is required to do at the motion to dismiss stage, the contract at issue is the limited warranty. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This conclusion renders

Defendant's privity argument irrelevant. Accordingly, Defendant's Motion to Dismiss Plaintiff's breach of contract claim based on either privity or surplusage is **DENIED**.

### 3.  Breach of the Implied Warranty of Merchantability

Plaintiff, in a footnote, purports to withdraw his claim for breach of the implied warranty of merchantability. (ECF No. 14 at 1). Although Plaintiff cites neither a Federal Rule of Civil Procedure nor case law for this action, "the proper procedural mechanism for a plaintiff to eliminate particular claims lies under Rule 15(a) for amendment of the complaint." *Hart v. Paint Valley Loc. Sch. Dist.*, No. C2-01-004, 2002 WL 31951264, at *4 n.11 (S.D. Ohio Nov. 15, 2002) (citing *Management Investors v. United Mine Workers of Am.*, 610 F.2d 384, 394–95 (6th Cir.1979)). Under Rule 15(a), plaintiffs have two primary alternatives: (1) "[a]mending as a [m]atter of [c]ourse"; or (2) with the permission of the opposing party or the court. *See* Fed. R. Civ. P. 15(a)(1)–(2). Under 15(a)(1)(B), a party may, "if the pleading is one to which a responsive pleading is required," modify that pleading within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15(a)(1).

Here, the pleading being amended is the complaint. Hence, it is the type of pleading "to which a responsive pleading is required." Further, no responsive pleading has been filed by Defendant. Instead, the Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) on May 7, 2021. (ECF No. 7); *see also* Advisory Committee Notes to Rule 15, 2009 Amendments ("[A] motion is not a 'pleading' as defined in Rule 7."). As such, Plaintiff had 21 days after service of that motion to amend its pleading as a matter of course. On May 28, 2021, Plaintiff withdrew his breach of the implied warranty of merchantability via his Response in Opposition to Defendant's Motion to Dismiss. (ECF No. 14). Accordingly, the Court construes Plaintiff's withdraw as amending its Complaint as a matter of course which he is entitled to do *once* under Rule 15(a). Moreover, this is specifically contemplated by the 2009 amendments of Rule 15(a). *See* Advisory

Committee Notes to Rule 15, 2009 Amendments ("This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided…."). Thus, Plaintiff's claim for breach of the implied warranty of merchantability is **DISMISSED WITHOUT PREJUDICE**.

### 4. Breach of Warranty under the Magnuson Moss Act

First, "[t]he Magnuson-Moss Warranty Act ("MMWA") is a vehicle to assert state law breach of warranty claims in federal court. 15 U.S.C. § 2310(d)." *Albright v. Sherwin-Williams Co.*, No. 1:17 CV 2513, 2019 WL 5307068, at *10 (N.D. Ohio Jan. 29, 2019). Because "the MMWA does not create a unique federal warranty, 'to the extent the state-law express and implied warranty claims survive dismissal, so does the MMWA claim.'" *Id.* (quoting *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 626 (N.D. Ohio 2016)). Therefore, because Plaintiff has sufficiently pled his breach of express warranty claim, he also satisfies the pleading requirement of MMWA. As such, Defendant's Motion to Dismiss the MMWA claim is **DENIED**.

### C. Motion to Strike Plaintiff's Request for Punitive Damages

Defendants also move to strike under Federal Rule of Civil Procedure 12(f). (ECF No. 7 at 19). Relying on *Atsco Holdings Corp. v. Air Tool Service Co.*, CASE NO. 1:15CV1586, 2016 WL 3078902, at *2 (N.D. Ohio June 1, 2016) and *Harwood v. Avaya Corp.*, No. C2-05-828, 2007 WL 1598065, at *1 (S.D. Ohio May 31, 2007), Defendant argues that this Court can and should strike requests for punitive damages absent a tort or fraud-based claim. Moreover, according to Defendants, without assertions of "demonstrated malice or aggravated or egregious fraud," Plaintiff cannot recover punitive damages. (*Id.*) (citing *In re E. I. Du Pont De Nemours and Company C-8 Personal Injury Litig.*, Civil Action 2:13-md-2433, 2015 WL 4943968, at *1 (S.D. Ohio Aug. 19, 2015)).

Plaintiff contends that punitive damages are available in limited circumstances in a claim for breach of warranty, citing *Complete Aluminum & Insulation, Inc. v. Kigar*, C. A. NO. F-82-15, 1983 WL 6789, at *4 (Ohio Ct. App. Apr. 29, 1983). Moreover, Plaintiff argues that it cannot be determined at this stage of the litigation whether Plaintiff asserts no basis for the recovery of punitive damages.

In terms of the general propositions of Ohio law concerning punitive damages, both parties are right. Plaintiff correctly notes that in some limited circumstances, punitive damages are recoverable under a breach of warranty theory. Moreover, Defendants are also correct to say that such damages may only flow from conduct that goes beyond a typical breach of contract. According to the Court of Appeals of the Sixth District of Ohio, in *Complete Aluminum & Insulation, Inc. v. Kigar*, Ohio law "recognize[s] … that in order for such an award to be made in a breach of contract case, ". . . the breach must be attended by some intentional wrong, insult, or abuse, or gross negligence which amounts to an independent tort." 1983 WL 6789, at *4 (quoting *Saberton v. Greenwald*, 146 Ohio St. 414, 66 N.E.2d 224 (1946)) (internal quotations omitted). Thus, while "as a general rule, damages for breach of contract are limited to the pecuniary loss sustained," an exception exists when "the breach … amounts to an independent, willful tort." *Id.* (citing *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922)). Yet, Plaintiff asserts no additional facts that suggest GM's alleged breach of contract and warranties amount to an independent tort. Moreover, to the extent Plaintiff unearths evidence of such conduct in discovery, he may always seek to amend his Complaint. Accordingly, Defendant's Motion to Strike is **GRANTED**.

22

### D.  Motion to Dismiss under 12(b)(1)

Defendant contends that some of Plaintiff's claims must be dismissed for lack of subject matter jurisdiction.  (ECF No. 7 at 18).  Specifically, Defendant argues that because Plaintiff purports to represent members of the putative class that have purchased or leased distinct vehicle models, including model years, he lacks standing to bring those claims.  (*Id.*).  Supporting this assertion, Defendant relies on several out-of-district cases. (*Id.* at 19) (citing *Sanborn v. Nissan N. Am.*, 2015 U.S. Dist. LEXIS 189600, at *6 (S.D. Fla. June 15, 2015); *Pearson v. Target*, No. 11 CV 7972, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012); *Granfield v. Nvidia*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); and *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202, at *1 (N.D. Ohio Nov. 11, 2011)). In short, Defendant maintains that because Plaintiff has not asserted facts that suggest that he has been injured by any of the Class Vehicles other than his own, his claims cannot satisfy the standing requirement.  (*Id.*).

Plaintiff responds by offering a different standard and asserting that it is inappropriate to consider Defendant's motion on this basis at this stage. (ECF No. 14 at 19).  According to Plaintiff, all that is required of the named-Plaintiff to satisfy standing is to plead substantial similarity between the product he purchased and the others he did not.  (*Id.* at 18).  Plaintiff relies primarily on *Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1091 (S.D. Ohio 2018) for this proposition.  (*Id.*).

Absent controlling law on this matter, this Court finds *Hawes* to be persuasive.  There, the named-Plaintiff Hawes and Hill purchased bed sheets from Macy's.  *Hawes*, 346 F. Supp. 3d at 1089.  Plaintiffs asserted that the 900 or 1000 thread count sheets they purchased were in fact much lower.  *Id.*  Because Plaintiffs only purchased one set of sheets but purported to represent class members who also purchased sheets from Macy's made by the same manufacturer, Defendant moved to dismiss for lack of standing.  *Id.* at 1090.  First, the *Hawes* Court found that the sheets were substantially similar in that they were made by the same manufacturer, sold by the same

retailer, and allegedly suffered from the same issue (inflated thread counts).  *Id.* at 1091. Moreover, the *Hawes* Court found that such analysis is "more appropriate at the class certification stage."  *Id.*

Furthermore, Plaintiff asserts that he met this substantial similarity standard by explaining the way Defendant itself viewed the Class Vehicles when it issued its Transportation Safety Bulletins (TSB).  (ECF No. 14 at 19).  Indeed, Defendant, in these communications acknowledged that the same shifter issues affect all Class Vehicles.  (*Id.*).  Finally, Plaintiff, also relying on *Hawes*, notes that examining "whether Plaintiff have standing to bring claims on behalf of other purchasers is more appropriate at the class certification stage, not upon a motion to dismiss."  (*Id.*) (citing *Hawes*, 346 F. Supp. 3d at 1091).

Here, the facts are quite similar to *Hawes*.  Named-Plaintiff Riley purchased a product from GM that he alleges suffers from a discrete issue: shifter malfunction.  Moreover, he purports to represent unnamed class members who also purchased (or leased) similar products (vehicles) from authorized dealerships (a similar retailer) made by the same manufacturer (GM).  Furthermore, as relied on in *Hawes,* courts have noted that it is not clear whether the issue raised by Defendants "is a question of standing or adequacy of representation."  *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010).  Rather than complicate this unanswered issue, the Court "will defer ruling on the issue until the class certification stage."  *Id.*; *see also Reynolds v. FCA US LLC*, No. 19-11745, 2021 WL 2682794, at *6 (E.D. Mich. June 30, 2021) ("Here, because Plaintiffs have standing with respect to their own vehicles … the Court will defer consideration of the scope of the proposed vehicle class until class-certification.").  Accordingly, Defendants Motion to Dismiss based on 12(b)(1) is **DENIED**.

#### IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 7).  Defendant's Motion to Strike Plaintiff's request for Punitive Damages is **GRANTED**. (*Id.*).  Finally, per Plaintiff's Response in Opposition (ECF No. 14), its Breach of Implied Warranty of Merchantability Claim is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 15, 2022**